IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.     No. CR 21-1537 RB

JAVIER TORRES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**BEFORE THE COURT** is Mr. Torres's Motion for Reduction of Sentence, in which Mr. Torres argues his 57-month sentence should be reduced to 46 months under Amendment 821 to the United States Sentencing Guidelines. (Doc. 53.) *See* U.S. SENT'G GUIDELINES MANUAL § 4A1.1(e) (U.S. SENT'G COMM'N 2023) (USSG). The Government filed a response opposing the reduction. (Doc. 54.) Mr. Torres did not file a reply. Having reviewed the parties' arguments, the record, and the applicable law, the Court finds the Motion is not well-taken. It is therefore **DENIED.**

**I.   BACKGROUND**

In August 2021, Mr. Torres was on supervised release pursuant to his sentences in two federal cases: *United States v. Torres*, Case No. 09-cr-1378 (D.N.M.) (*Torres I*) and *United States v. Montoya, et al.*, Case No. 10-cr-3161 (D.N.M.) (*Torres II*). (Doc. 40 at 5–6.) On August 18, 2021, Mr. Torres was arrested for violating his conditions of release and later charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Docs. 40 at 2; 51 at 1.) The United States and Mr. Torres entered into a Plea Agreement, in which Mr. Torres agreed to plead guilty to possessing a firearm while on supervised release, and to violating the terms of supervised release in *Torres I* and *II*. (Doc. 40 at

1

2, 6.) The United States agreed to move for a reduction of the offense level in this case based on Mr. Torres's acceptance of responsibility. (*Id*. at 6–7; *see* Doc. 42 at 3.) In addition, the parties agreed to recommend that the incarceration imposed for Mr. Torres's supervised release violations in *Torres I* and *II* run concurrently with each other and with the sentence imposed in this case. (Docs. 40 at 7; 42 at 3.)

Before sentencing in this case, the United States Probation Office (USPO) prepared a Presentence Report stating Mr. Torres's base offense level was 20[1] and, after a two-level upward adjustment for possessing four firearms and a three-level downward adjustment for acceptance of responsibility, his total offense level was 19. (Doc. 42 at 6–7.) The USPO calculated six criminal history points and, because Mr. Torres was on supervised release at the time of his arrest, added two "status points" for a total of eight criminal history points. (*Id.* at 16 (citing § 4A1.1(d) (pre-Amendment 821)).) Mr. Torres's criminal history category was therefore IV. (*Id.*) An offense level of 19 and criminal history category of IV equated to a Guidelines range of 46 to 57 months. (*Id*. at 24.) *See* USSG Chap. 5, Part A. The USPO noted that had the defendant been "convicted at trial, the total offense level would have been 22, absent any downward adjustments. A total offense level of 22, combined with a criminal history category of IV, would have resulted in a guideline imprisonment range of 63 to 78 months." (Doc. 42 at 24.)

In November 2022, the Court sentenced Mr. Torres to 57 months incarceration. (Doc. 51 at 1.) On the same day, the Court ordered the 18-month incarceration in *Torres I* and *II* to run concurrently with the sentence in this case. (*Id*.)

Since Mr. Torres was sentenced, Congress amended the Sentencing Guidelines to modify the way "status points" are assessed for certain offenses and the offense level calculation for

---

[1] The USPO used the 2021 Guidelines Manual to determine Mr. Torres's offense level and criminal history category. (Doc. 42 at 6.)

2

defendants with no criminal history points (Amendment 821). *Compare* § 4A1.1(d)(pre-amendment) *with* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254-01, 2023 WL 3199918 (May 3, 2023) *and* §§ 4A1.1(e), 4C1.1. Amendment 821 applies retroactively. *See* § 1B1.10(a)(1), (d).

In August 2023, Mr. Torres, acting pro se, filed a motion in *Torres II* in which he argued that extraordinary and compelling reasons warranted a sentence reduction, citing his health conditions, the COVID-19 pandemic, and his need for heart surgery. (*Torres II*, Docs. 135 at 1–2; 139 at 6–7.) He also sought a sentence reduction under Amendment 821. (*Torres II,* Doc. 139 at 5–6.) The United States, in its Response, noted that it was "proceeding as if [Mr. Torres] filed the" motion in this case (21cr1537), and "presume[d] he seeks a reduction in" the 57-month sentence. (*Torres II*, Doc. 142 at 1.) Similarly, in its Memorandum Opinion and Order denying Mr. Torres's motion, the Court analyzed Amendment 821's impact on his 57-month sentence in this case. (*Torres II*, Doc. 146 at 5–8.) *See also* § 1B1.10 app. note 8(A) (stating that "[o]nly a term of imprisonment imposed as part of the original sentence is authorized to be reduced under this section. This section does not authorize a reduction in the term of imprisonment imposed upon revocation of supervised release."). The Court held that although Mr. Torres was eligible for a sentence reduction under Part A of Amendment 821, Mr. Torres's "recidivist criminal history and offense conduct demonstrate that he would pose a public safety threat if his sentence were reduced." (*Torres II*, Doc. 146 at 5–8.) It noted,

> The PSR shows that Torres has, *inter alia*, criminal convictions for battery against a household member; resisting, evading, or obstructing an officer after he fled from an officer in a car and on foot; cruelty to animals; possession of a firearm after a domestic violence conviction; and distribution of methamphetamine, a charge which also involved firearms. (*See* [Doc. 42] ¶¶ 38–40, 42–43.) Torres has admitted to gang activity. (*Id.* ¶ 47.) The PSR states that Torres "did not adjust well to incarceration and incurred multiple disciplinary infractions for possessing alcohol or drugs [and] dangerous weapons[ for]

assault" while incarcerated. (*Id.* at 15, 27.) And as discussed above, Torres returned to substance abuse while on supervised release and absconded from treatment. (*See id.* ¶ 97.)

(*Id*. at 7.) Mr. Torres, represented by the Federal Public Defender's office, now asks the Court to reduce his sentence to 46 months under Part A of Amendment 821. (Doc. 53.)

## II.  LEGAL STANDARDS

### A.  Sentence Modifications under 18 U.S.C. § 3582

A district court may modify a sentence "only pursuant to statutory authorization." *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997). Section 3582(c)(2) provides that authorization for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also* § 1B1.10(a)(1). Section 3582 "authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon v. United States*, 560 U.S. 817, 826 (2010).

Sentence reductions fall "within the district court's discretion." *United States v. Osborn*, 679 F.3d 1193, 1196 (10th Cir. 2012) (quoting *United States v. Dorrough,* 84 F.3d 1309, 1311 (10th Cir. 1996)). However, the Sentencing Guidelines require that "any such reduction in the defendant's term of imprisonment shall be consistent with" the USSG policy statements. § 1B1.10(a)(1). Those policy statements require courts proceeding under § 3582(c)(2) to substitute the amended Guidelines range for the range applicable when the defendant was sentenced and to "leave all other guidelines application decisions unaffected." § 1B1.10(b)(1). "Under § 3582(c)(2), a court may then grant a reduction within the amended Guidelines range if it determines that one is warranted 'after considering the [applicable] factors set forth in'" § 3553(a). *Dillon*, 560 U.S. at 822 (quoting § 3582(c)(2)). "Except in limited circumstances, however," a court may not reduce

a sentence "to a term that is less than the minimum of the amended" Guidelines range. *Id.* (quoting § 1B1.10(b)(1)).

Under § 3553, courts must consider, as applicable, "the nature and circumstances of the offense and the history and characteristics of the defendant;" and whether the sentence imposed "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense," "afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant . . . ." § 3553(a)(1), (2)(A)–(C). In addition, courts consider the sentencing range under the Guidelines and the Sentencing Guidelines' policy statements. § 3553(a)(4), (5). Finally, courts consider the "kinds of sentences available, . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . and the need to provide restitution to any victims of the offense." § 3553(a)(3), (6), (7). "[A]n ameliorative amendment to the Guidelines in no way creates a *right* to sentence reduction." *Osborn*, 679 F.3d at 1196.

### B. Amendment 821

Before Amendment 821, Section 4A1.1(e) required the addition of two "status points" to a defendant's criminal history point total when the instant offense was committed "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." § 4A1.1(e). *United States v. McDonald*, No. CR 22-1317 JB, 2024 WL 2110525, at *8 (D.N.M. May 10, 2024). Part A of Amendment 821 reduced the number of status points added depending on the defendant's criminal history points. *See* 88 Fed. Reg. 28254-01, 2023 WL 3199918; § 4A1.1(e). For instance, a person who has seven or more criminal history points now receives only one status point for applicable offenses, instead of two. § 4A1.1(e). In addition, a person with six or fewer criminal history points now receives no status points for such

offenses. *Id.* In addition, Amendment 821 Part B added a new section to the USSG providing that courts may reduce the offense levels by two for offenders who have zero criminal history points and meet specified additional criteria. § 4C1.1(a); U.S. SENT'G GUIDELINES MANUAL app. C Supp.(U.S. SENT'G COMM'N 2023).

In determining whether to reduce a sentence under Amendment 821, the Court must first determine whether the defendant is eligible for a reduction by determining whether the Guidelines range calculated under Amendment 821 is lower than the Guidelines range on which the defendant's sentence was based. *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017); § 1B1.10(b)(1). If not, a defendant is not eligible for a reduction and the Court "lacks jurisdiction over the defendant's motion and the motion must be dismissed." *C.D.*, 848 F.3d at 1289; *see also United States v. Munoz*, 682 F. App'x 635, 636 (10th Cir. 2017) (same); *United States v. Warren*, 22 F.4th 917, 926 n.6 (10th Cir. 2022) (noting that, while eligibility for a sentence reduction under § 3582 is a jurisdictional question under Tenth Circuit precedent, that precedent may "need to be revisited").

If the defendant is eligible for a sentence reduction, the Court must then consider whether the defendant has shown "a sentence reduction is consistent with the Commission's policy statements" and entitlement to "relief in light of the applicable sentencing factors found in" § 3553(a). *C.D.*, 848 F.3d at 1289–90; *see also* § 1B1.10(a)(1), § 3582(c)(2). The fact that a court considered the § 3553(a) factors in the initial sentencing does not preclude a court from considering them in the context of a sentence reduction motion. *Osborn*, 679 F.3d at 1196. In addition to the § 3553(a) factors, courts may consider "post-sentencing conduct," § 1B1.10, app. n.1(B)(iii), and "the benefits the defendant gained by entering a Type–C [plea] agreement when it

6

decides whether a reduction is appropriate . . . ." *Hughes v. United States*, 584 U.S. 675, 689 (2018); *see also Osborn*, 679 F.3d at 1195.

### III.  DISCUSSION

Mr. Torres is eligible for a sentence reduction because his sentence was based on a Guidelines range that was subsequently lowered by Amendment 821 and his current sentence of 57 months is above the low end of the amended Guidelines range. Mr. Torres had six criminal history points, to which two status points were added. (Doc. 42 at 6–7.) Applying Part A of Amendment 821 would eliminate the status points, lowering his total score to six, and the resulting criminal history category to III instead of VI. *See* USSG Chap. 5, Part A. With an offense level of 19 and criminal history category of III, Mr. Torres's Guidelines range would be 37 to 46 months, rather than 46 to 57 months. *Id*.

In addition, the sentence reduction Mr. Torres seeks is consistent with the USSG policy statement in § 1B1.10(b)(1). The requested sentence of 46 months is not "less than the minimum of the amended" Guidelines range, or "less than the term of imprisonment [Mr. Torres] has already served." § 1B1.10(b)(2)(A), (C). (*See* Doc. 51 at 1 (stating that Mr. Torres has been in continuous custody since August 23, 2022, i.e., approximately 24 months).) And in accordance with the USSG's specific guidance regarding Amendment 821, the effective date of this Order is after February 1, 2024. § 1B1.10(e)(2).

However, considering the applicable § 3553(a) sentencing factors, the Court concludes a sentence reduction is not appropriate for the same reasons stated in its previous Order. (*See Torres II*, Doc. 146.) Mr. Torres has "repeatedly exhibited dangerous and violent conduct and he fails to mount any effective argument to show that a sentence reduction would reflect the seriousness of his offense, promote respect for the law, or protect the public." (*Id*.) *See* § 3553(a)(2). In addition,

7

as the United States points out, the Court already rejected a sentence of 46 months when it sentenced Mr. Torres to the high end of the then-applicable Guidelines range of 46 to 57 months. (*See* Docs. 54 at 13; 48.) Additionally, according to the PSR, Mr. Torres has a long criminal history of drug possession and other crimes, including battery against a household member, resisting, evading, or obstructing an officer, cruelty to animals, and conspiracy to distribute 50 grams and more of methamphetamine. (Doc. 42 at ¶¶ 37–43.) In this context, reducing his current sentence would neither reflect the seriousness of the offense nor protect the public from further crimes. *See* § 3553(a)(2)(A), (C).

Further, Mr. Torres's disciplinary record while incarcerated weighs heavily against a sentence reduction. Between 2014 and 2023, he twice assaulted another inmate, possessed a dangerous weapon or alcohol or drugs multiple times, and introduced narcotics into the facility. (Docs. 42 at ¶ 43; 51 at 1.) The most recent assault of an inmate occurred in November 2023. (Doc. 51 at 1.) Similar records have been found to weigh against a sentence reduction. *See, e.g.*, *United States v. Verduzco*, 677 F. App'x 486, 487 (10th Cir. 2017) (26 infractions "including multiple instances of assault, fighting, and possession of a dangerous weapon"); *United States v. Camacho*, 654 F. App'x 927, 930 (10th Cir. 2016) (14 infractions "including assaulting prison staff, possession of dangerous weapons, threatening bodily harm, and using methamphetamine"); *United States v. Ringer*, 350 F. App'x 210, 212 (10th Cir. 2009) (infractions included "two assaults, five occurrences of possessing a controlled substance, possession of a dangerous weapon, two episodes of setting fires, and two misconducts for fighting"); *United States v. Madrid*, No. CR 18-2325-WJ, 2024 WL 2763764, at *3 (D.N.M. May 30, 2024) (infractions included not obeying an order, assaulting an inmate, and refusing a work/program assignment on three occasions which "reflect[ed] a lack of respect for the law"). Reducing Mr. Torres's sentence in the face of these

infractions would not reflect the need for the sentence to afford adequate deterrence to criminal conduct. *See* § 3553(a)(2)(B).

Finally, Mr. Torres received substantial benefits from the Plea Agreement in reduction of the Guidelines range and in the way his sentences were imposed. For example, in the absence of his Plea Agreement, his offense level would have been 22. (Doc. 42 at 24.) Assuming a criminal history category of IV as calculated before Amendment 821, the Guidelines range would have been 63 to 78 months. *Id*. Even if Mr. Torres's criminal history category was adjusted to III consistent with Amendment 821, the Guidelines range still would have been 51 to 63 months without the benefit of the Plea Agreement. *See* USSG Chap. 5, Part A. In addition, per the Plea Agreement, the 18-months incarceration imposed in *Torres I* and *II* were ordered to run concurrently with the sentence in this case. (*Torres I*, Doc. 86 at 3; *Torres II*, Doc. 134 at 3.) These facts weigh against reducing the sentence. *See United States v. Cota-Medina*, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. Mar. 31, 2022) (affirming the district court's denial of a reduction where it determined that the "original sentence was fair and reasonable given the considerable benefits" the defendant received from a plea agreement (quotation marks and citation omitted)); *Madrid*, 2024 WL 2763764, at *3 (holding that the plea agreement's benefits to the defendant, including reducing his Guidelines range by 20 months and running his sentences concurrently, weighed against reducing his sentence).

## IV. CONCLUSION

The Court finds Mr. Torres is eligible for a sentence reduction under Amendment 821 and that a reduction is not inconsistent with the USSG policy statements. However, after considering Mr. Torres's history and characteristics, the nature of the crime, public safety, the need for the

9

sentence to deter criminal conduct, Mr. Torres's post-sentence conduct, and the benefits already afforded under the Plea Agreement, the Court finds a reduction is not warranted.

**IT IS THEREFORE ORDERED** that Mr. Torres's Motion for Reduction (Doc. 53) is **DENIED.**

_____
ROBERT C. BRACK
SENIOR UNITED STATES DISTRICT JUDGE